IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CALIFORNIA BANK & TRUST,
as assignee of the Federal Deposit Insurance
Corporation, as receiver for Vineyard Bank,
a California banking corporation,

|          |                                      |
|----------|--------------------------------------|
| Plaintiff, | No. 3:12-cv-506-HZ (lead case)    |
|          | No. 3:12-cv-508-HZ (member case)    |
|          | No. 3:12-cv-509-HZ (member case)    |

No. 3:12-cv-506-HZ (lead case)
No. 3:12-cv-508-HZ (member case)
No. 3:12-cv-509-HZ (member case)

OPINION & ORDER

        v.

SHILO INN, SEASIDE EAST, LLC, an
Oregon limited liability company, and
MARK S. HEMSTREET,
an Oregon resident,

                Defendants.

Eric D. Lansverk
Joseph A.G. Sakay
HILLIS CLARK MARTIN & PETERSON
1221 Second Avenue, Suite 500
Seattle, WA 98101

Hal Mark Mersel
Ren R. Hayhurst
BRYAN CAVE LLP
3161 Michelson Drive
Suite 1500
Irvine, CA 92612

  Attorneys for Plaintiff

Sherrie D. Martinelli
Charles R. Markley
GREENE & MARKLEY, P.C.
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201

  Attorneys for Defendants

HERNÁNDEZ, District Judge:

  Plaintiff California Bank & Trust ("CB&T") brings this summary judgment motion under Federal Rule of Civil Procedure 56(a), Local Rule 56-1, the terms of the loan documents, and applicable California law. CB&T moves for partial summary judgment on its third cause of action for judicial foreclosure of CB&T's liens and security interests and for a judgment against Defendants Shilo Inn, Seaside East, LLC ("Shilo Seaside"); Shilo Inn, Newberg, LLC ("Shilo Newberg"); Shilo Inn, Rose Garden, LLC ("Shilo Rose Garden"); and Mark S. Hemstreet ("Hemstreet") (collectively, "Defendants") for the deficiency on the indebtedness after completion of the foreclosure sales. CB&T also moves for summary judgment on Defendants' counterclaims. The Court grants CB&T's motion. The Court also grants CB&T's and Defendants' requests for judicial notice pursuant to rule 201 of the Federal Rules of Evidence.


///


///

2 – OPINION & ORDER

# BACKGROUND

## I.    History of the Case Prior to Proceedings in this Court

This case is about Defendants' default on loans originally made in 2005 and 2006 by Vineyard Bank.[1] CB&T acquired the loans in September 2009, by agreement with the FDIC, as receiver for Vineyard. Ventura Decl. Ex. 6, 20, 28. The loans are evidenced, in part, by several documents including Promissory Notes, Deeds of Trust, Business Loan Agreements, and Commercial Security Agreements, (collectively and along with the First and Second Loan Amendments, "Loan Documents"). Id. Exs. 1-5, 15-19, 24-27.

Defendants defaulted on the Notes and Deeds of Trust in or about September 2009 by failing to make the monthly payments due under the Loan Documents. In November 2010, Defendants and CB&T entered into a First Amendment to Deeds of Trust, Promissory Notes, and other Loan Documents. Id. Exs. 7, 21, 29, 33. Under the terms of the First Amendment, the loans were cross-defaulted with six loans made to other Shilo borrowers and a personal line of credit previously made to Mark Hemstreet ("Hemstreet Loan"). Defendants also agreed to grant CB&T a security interest in the properties to secure the Hemstreet Loan. Each of the Defendants and Hemstreet entered into a separate First Amendment of their respective loan on similar terms (collectively, the "First Amendments").

Defendants defaulted on both monetary and non-monetary obligations under the First Amendments. Defendants failed to make the monthly payments due beginning on December 1,

---

[1] In August 2005, Vineyard Bank, N.A. ("Vineyard") provided financing to Shilo Seaside in the original principal amount of $2,000,000, Ventura Decl. Ex. 1; and Vineyard provided financing to Shilo Newberg in the original principal amount of $1,700,000. Id. Ex. 15. In April 2006, Vineyard provided financing to Shilo Rose Garden in the original principal amount of $1,500,000. Id. Ex. 24. In April 2005, Vineyard made an unsecured revolving line of credit loan to Mark Hemstreet personally, in an amount not to exceed $5,000,000. Id. Ex. 32.

2010. In addition, Shilo Rose Garden failed to execute a second priority deed of trust to secure the Hemstreet Loan as required by the First Amendment.

In June 2011, Defendants and CB&T executed the Forbearance and Second Amendment to Deeds of Trust and Other Loan Documents (collectively, "Second Amendments"). By October and November 2011, Defendants were in default on the Second Amendments. The monetary and non-monetary defaults under the Second Amendments included the following: failure to pay monthly interest payments on their respective loans; failure to deliver Monthly Sales Reports; failure to satisfy the Post-Closing Obligations required by Section 2(c) of the Second Amendments; and failure to comply with the provisions of Section 2(d)(ii)(A) requiring the entry of at least two Purchase Agreements by September 30, 2011.

On or about November 10, 2011, CB&T notified Defendants of the above-referenced defaults. Ventura Decl. Ex. 9. Defendants failed to cure both the monetary and non-monetary defaults. Additional defaults under the loans occurred when Defendants failed to comply with Section 2(d)(ii)(B) requiring Defendants to have entered into purchase agreements for four properties, and Section 2(d)(iv)(A) requiring the closing of at least two sales by December 31, 2011.

## II.    Initial Proceedings in this Court

On March 21, 2012, CB&T commenced the present judicial foreclosure actions in this Court against Shilo Seaside, Shilo Rose Garden, and Shilo Newberg (collectively, "Shilo").[2] CB&T also named Mr. Hemstreet as a defendant in relation to a personal line of credit. In the complaint, CB&T sought: (1) the appointment of a receiver to protect its interest in the rents

---

[2] CB&T also commenced three parallel foreclosure actions in the United States District Court for the District of Idaho against Shilo Inn, Nampa Blvd, LLC; Shilo Inn, Boise Airport, LLC; and Shilo Inn, Twin Falls, LLC. CB&T also commenced a parallel foreclosure action in the Eastern District of Washington against Shilo Inn, Moses Lake, LLC.

collected by Shilo and an injunction to prevent Shilo and Hemstreet from interfering with the receiver's duties; (2) an accounting of receipts, rents, income, and profits collected by Shilo; and (3) a judicial foreclosure of CB&T's liens and security interests in the Shilo property.

On May 11, 2012, this Court issued an Order stating that, while CB&T was entitled to the appointment of a receiver, equity required CB&T to provide Defendants with a payoff amount within seven days and an opportunity for Defendants to render the payoff amount within fourteen days thereafter. Order, [38]. If Defendants timely paid the payoff amount, CB&T's motion for the appointment of a receiver and injunction would be moot; however, if Defendants failed to timely pay the amount due, then the Court would appoint a receiver. Id.

Between May 17 and June 14, 2012, CB&T provided Defendants with the payoff amount for each of the properties, including claimed attorneys' fees and punitive default interest. Defendants disputed the claimed attorneys' fees. The Court ordered Defendants to pay all sums due except the disputed fees, which would be addressed by the Court at a later date. Defendants made the payment to CB&T, with the exception of outstanding attorneys' fees and expenses, thereby avoiding the appointment of a receiver in this case.[3]

On June 15, 2012, CB&T notified Defendants that additional defaults would occur if they did not satisfy the monetary and non-monetary obligations in the Second Amendments by the expiration of the forbearance period. Ventura Decl. Ex. 10-11. The forbearance period provided for under the Second Amendments expired on June 30, 2012, at which time additional defaults occurred. These additional defaults included the failure to comply with Section 2(d)(ii)(c) requiring Defendants to have entered into purchase agreements for five properties and Section 2(d)(iv)(B) and (C) requiring Defendants to have closed all five sales. After Defendants failed to

---

[3] Although Shilo Inn paid the default interest, it did so with a reservation of rights.

5 – OPINION & ORDER

cure the defaults by the expiration of the forbearance period, CB&T exercised its rights to accelerate the balance owed on the loans. Prior to acceleration, the loans were set to mature on December 31, 2013.

In July 2012, CB&T notified Defendants of existing defaults on their loans. Ventura Decl. Ex. 12. CB&T contended that, while Defendants' payoff payments or "reinstatement payments" had addressed the monetary defaults under the loans up until that point, Defendants still had outstanding non-monetary defaults stemming from the failure to comply with various terms of the First and Second Amendments to the loans.

On October 1, 2012, this Court entered an Order granting Plaintiff leave to supplement its complaint to reflect the following factual allegations:

(1) Plaintiff reminded Defendants in a letter on June 15, 2012, that further events of default would exist under the loan documents if required actions were not completed by the end of the "Forbearance Period" (as defined in the Second Amendment), which was set to expire on June 30, 2012;
(2) Pursuant to Sections 2(d)(iv) and (v) of the Second Amendment, "Selling Borrowers" were required to have sold the "Sale Properties" on or before June 30, 2012 to pay down the outstanding balances (as all such terms are defined in the Second Amendments) of the loans;
(3) "Post-Closing Obligations" (as defined in the Hemstreet First Amendment) were to be satisfied no later than August 17, 2011 pursuant to Section 2(c) of the Second Amendment;
(4) Defendants failed to take the required actions by June 30, 2012 and August 17, 2011;
(5) Defendants failed to fully comply with each of the terms, conditions, and covenants contained in Section 2 of the Second Amendment, thereby materially breaching their loan obligations pursuant to Section 7 of the Second Amendment;
(6) Shilo Inn was not in full compliance with the obligations under the Second Amendment; and,
(7) All obligations under Defendants' loan documents had fully "matured" and consequently the entire outstanding indebtedness were due and owing in full.

Pl.'s Mot. File Supp. Compl. Ex. 1, ¶¶ 48-55. Plaintiff's Verified Supplemental Complaint was filed with the Court on December 6, 2012.

### III.    The Settlement Agreement

On or about January 28, 2013, the parties entered into a Settlement and Release Agreement ("Settlement Agreement"). Ventura Decl. Ex. 13. Under the Settlement Agreement, CB&T agreed to forbear from foreclosing on its deeds of trust and to accept a discounted payoff of the loans if Defendants made the discounted payoff on or before April 30, 2013, the "Loan Payoff Date." In exchange, Defendants agreed to release any potential claims against CB&T.

### IV.    Defendants' Bankruptcy Proceedings

On May 2, 2013, Defendants filed a Notice of Automatic Stay based on the corporate Defendants' filing of Chapter 11 petitions in the U.S. Bankruptcy Court for the Central District of California ("Bankruptcy Court"). On May 24, 2013, this Court dismissed this action in its entirety, without prejudice to the rights of the parties to reopen proceedings if the Bankruptcy Court did not resolve the dispute.

Since the bankruptcy filing, Defendants have made Court-ordered monthly adequate protection payments to CB&T equal to approximately 5% per annum of the principal balance due. However, Defendants have failed to cure the various non-monetary and monetary defaults described above. After acceleration of the loans, Defendants failed to pay all amounts due and owing. Even if the loans had not been accelerated, the loans would be due and owing in full, as they would have matured by their own terms on December 31, 2013.

On May 21, 2014, the Bankruptcy Court issued an Order Granting the Motion for Relief from the Automatic Stay, allowing Plaintiff to enforce its remedies to foreclose upon and obtain possession of each property in accordance with applicable bankruptcy law so long as Defendants did not confirm plans of reorganization by November 6, 2014. No plans were confirmed.

///

7 – OPINION & ORDER

**V.      Second Round of Judicial Proceedings in this Court**

On August 8, 2014, the Court granted the parties' motion to reopen the case in order for

the parties to address the issues relating to foreclosure as permitted by the Bankruptcy Court

order. On December 17, 2014, the Court granted Defendants leave to file supplemental

counterclaims.

On January 8, 2015, Judge Zurzolo in the United States Bankruptcy Court, Central

District of California, approved Defendants' fourth amended disclosure statement. The hearing

on the adequacy of the proposed plans will be held on March 10, 2015.

Parallel cases have been proceeding in the District Courts of Eastern Washington and

Idaho. Most recently, on January 23, 2015, the District Court in the Eastern District of

Washington granted CB&T partial summary judgment for judicial foreclosure and summary

judgment on the defendants' counterclaims. California Bank & Trust v. Shilo Inn, No. CV-0161-

LRS, 2015 WL 300254 (E.D. Wash. Jan 22, 2015).

**VI.     Indebtedness (Based on the Ventura[4] Declaration)**

CB & T moves for a deficiency judgment in an amount to be established after completion

of the requested foreclosure sale. What follows are the amounts owing on each of the loans.

a.   Seaside Loan.

As of October 1, 2014, the amount owing on the Seaside Loan is $2,514,062.37 ("Seaside

Indebtedness"), which consists of principal in the amount of $1,854,989.65, interest in the

amount of $82,701.72, deferred interest at the contract rate in the amount of $167,776.38,

deferred legal fees in the amount of $19,426.51, deferred late charges in the amount of

$2,331.62, and expenses in the amount of $386,836.49, which consists of attorneys' fees and

---

[4] Eric Ventura is a Vice-President of CB&T with access to all bank records pertaining to the
subject loans. Ventura Decl. 2.

costs totaling $295,509.11 and other expenses in the amount of $91,327.38. Interest will continue to accrue at the rate of $257.64 per day. The details of the Seaside indebtedness are attached to the Ventura Declaration. Ventura Decl. Ex. 14.

      b.  Newberg Loan

As of October 1, 2014, the amount owing on the Newberg Loan is $2,179,582.94 ("Newberg Indebtedness"), which consists of principal in the amount of $1,576,755.11, interest in the amount of $70,297.08, deferred interest at the contract rate in the amount of $142,606.87, deferred legal fees in the amount of $18,681, deferred late charges in the amount of $1,981.89, attorneys' fees totaling $286,113.24 and other expenses in the amount of $83,147.75. Interest will continue to accrue at the rate of $218.99 per day. The details of the Newberg indebtedness are attached to the Ventura Declaration. Ventura Decl. Ex. 23.

      c.  Rose Garden Loan

As of October 1, 2014, the amount owing on the Rose Garden Loan is $2,049,467.25 ("Rose Garden Indebtedness"), which consists of principal in the amount of $1,434,025.23, interest in the amount of $63,933.51, deferred interest at the contract rate in the amount of $128,232.80, deferred legal fees in the amount of $32,213.50, deferred late charges in the amount of $1,802.49, attorneys' fees totaling $297,710.75 and other expenses in the amount of $91,548.97. Interest will continue to accrue at the rate of $199.17 per day. The details of the Rose Garden indebtedness are attached to the Ventura Declaration. Ventura Decl. Ex. 31.

      d.  Hemstreet Loan

As of October 1, 2014, the amount owing on the Hemstreet Loan is $5,951,045 ("Hemstreet Indebtedness"), which consists of principal in the amount of $5,000,000, interest in the amount of $856,319.45, deferred legal fees in the amount of $34,671, deferred late charges in

the amount of $11,611.11, late charges in the amount of $44,388.89, and other expenses in the amount of $4,054.40. Interest will continue to accrue at the rate of $763.89 per day. The details of the Hemstreet indebtedness are attached to the Ventura Declaration. Ventura Decl. Ex. 37.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support

his claim than would otherwise be necessary. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## DISCUSSION

CB&T's position in this case is simple—Defendants are each obligated to CB&T on loans; the loans are secured by, among other things, liens against real property in Seaside, Newberg, and Portland, Oregon; Defendants have defaulted under the loan documents; therefore, judicial foreclosure is appropriate. In addition, CB&T argues that Defendants waived and released their counterclaims in the parties' January 2013 Settlement Agreement and that the Settlement Agreement bars any argument by Defendants that they reinstated the loans. Alternatively, CB&T argues that the counterclaims lack merit.

Defendants make three arguments in opposition to summary judgment. First, they argue that when they made payments to CB&T in June 2012, they reinstated the loans pursuant to California Civil Code § 2924c, even though they did not cure all of the non-monetary obligations at that time. In addition, Defendants argue that the 2013 Settlement Agreement does not bar Defendants from defending the foreclosure claim on the basis that the loans were reinstated. Second, Defendants argue that CB&T cannot retain and enforce benefits it received under the parties' Settlement Agreement at the same time that it sues for the full amount of damages allegedly owed under the original obligations (as if the Settlement Agreement never existed). Defendants contend that CB&T has abandoned any right it had to enforce the terms of the Settlement Agreement, including the waiver and release by Defendants. Third, Defendants argue that CB&T's failure to reinstate the loans has resulted in meritorious counterclaims by Defendants.

11 – OPINION & ORDER

The parties also have a dispute about attorneys' fees. In its motion, CB&T asks the Court, to the extent that Defendants present evidence to assert a triable issue of fact as to the amount of attorneys' fees CB&T is entitled to recover, to grant summary judgment for judicial foreclosure and allow the foreclosure sale to proceed, and reserve the issue of the specific amount of reasonable attorneys' fees to be heard in conjunction with a post-judgment motion for CB&T's fees and costs incurred in this action.

## I.    Judicial Notice

Courts may take judicial notice of information "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

CB&T requests that the Court take judicial notice of the following types of documents: (1) decisions, orders, judgments, and transcripts from other United States District Courts in related cases; (2) Voluntary Petitions filed in the United States Bankruptcy Court Central District of California ("Bankruptcy Court") by the Shilo Defendants in this case and by Shilo entities in related cases; (3) orders from the Bankruptcy Court regarding the Shilo Defendants in this case; (4) UCC financing statements filed by the Shilo Defendants in this case; and (5) transcripts of proceedings regarding related Shilo entities in the United States District Court for the Eastern District of Washington and the Bankruptcy Court.

Defendants request that the Court take judicial notice of the following types of documents: (1) a complaint filed in the Superior Court for the State of California in a related case; (2) excerpts from the Proofs of Claim filed by CB&T in Bankruptcy Court regarding Shilo Defendants in this case and Shilo entities in related cases; and (3) a transcript and an order of

Bankruptcy Court proceedings regarding Shilo Defendants in this case and Shilo entities in related cases.

A court may take judicial notice of undisputed "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) (citing Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986)). When a court takes judicial notice of a public record, "it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity." Klein v. Freedom Strategic Partners, LLC, 595 F. Supp. 2d 1152, 1157 (D. Nev. 2009) (quoting Lee, 250 F.3d at 690). A court properly may take judicial notice of orders issued in other court proceedings. See Shaw v. Hahn, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992). A court also may take judicial notice of pleadings filed in other actions. See Burbank–Glendale–Pasadena Airport Authority v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir.) (court took judicial notice of pleadings filed in a related state court action). The existence and content of opinions and pleadings are matters capable of accurate and ready determination by resort to official court files that cannot reasonably be questioned. See Fed. R. Evid. 201(b)(2).

Therefore, the Court takes judicial notice of all of the requested documents.

## II.    Reinstatement of the Loans

The issue is whether Defendants cured all defaults under the loans when they made payments in June 2012 pursuant to this Court's Order.

The parties do not dispute that Defendants failed to make monthly payments due under the Loan Documents beginning in October and November 2011. Nor do they dispute that Defendants failed to comply with several non-monetary obligations including providing Monthly

Sales Reports, completing the Post-Closing Obligations, and contracting for and closing sales of multiple properties. For these reasons, this Court entered the following Order on May 11, 2012:

> The Court finds plaintiff is entitled to an order appointing a receiver; however, plaintiff is ordered to provide defendant with a payoff number within seven days of today. Defendant to pay in full within 14 days thereafter. If the amount is not paid in full by the 21st day from today, the court will sign an order appointing a receiver. If the amount is paid in full, the issue is moot. The court makes findings as stated on the record.

Order, [38]. As discussed above, CB&T provided Defendants with a payoff number and Defendants timely paid CB&T. However, the parties disagree about the legal effect of this "payoff."

CB&T takes the position that Defendants' payments to CB&T did not reinstate the loans and merely avoided the appointment of a receiver. In response, Defendants argue that there are provisions under California law for the protection of the borrower, such as the right to reinstate a loan secured by real property pursuant to California Civil Code § 2924c. Defendants contend that they "reinstated" their loans by virtue of having provided CB&T with the payoff amount. While acknowledging numerous ongoing and continuing defaults under its loan obligations, Defendants assert that when they paid the requisite amount that CB&T demanded, the entire loans that were due and owing (at least insofar as it involves the litigation pending in this Court) were reinstated by operation of law. As of yet, no judge or court involved in this proceeding or related proceedings has ruled that such a reinstatement alleged by Defendants ever occurred.

Defendants point to an email from CB&T's legal counsel, identifying the amount needed to reinstate in an attachment titled "Total Amount to Reinstate." Raborn Decl. Exs. A-C. In addition, Defendants contend that CB&T expressly represented that it would "reinstate" the loans in numerous other e-mails between counsel. Id. at 9. Defendants further argue that CB&T waived its right to assert the non-monetary defaults by accepting the reinstatement amount

14 – OPINION & ORDER

without raising any objection to the reinstatement based upon the non-monetary defaults.

Furthermore, Defendants argue that CB&T wrongfully refused to accept a tender to reinstate the

Hemstreet Loan.

This Court rejected a similar argument from Defendants in an October 1, 2012 Opinion &

Order:

> Shilo Inn also argues that because it has tendered approximately $1.65 million to Plaintiff to "reinstate the loans pursuant to [CCP] Section 2924c and this Court's May 11 Order", Plaintiff is "estopped from declaring additional defaults based upon the non-monetary provisions in the Forbearance and Second Amendment." Specifically, Shilo Inn asserts that Plaintiff's supplemental allegations are barred by the doctrine of equitable estoppel because Plaintiff "was aware that as soon as Shilo Inn tendered the $1.65 million that it was the agreement and understanding of the parties that the loans would be reinstated pursuant to section 2924c" and that Shilo Inn "relied in good faith on [Plaintiff's] representations at the hearing and this Court's May 11 Ruling [sic] when it tendered in excess of $1.65 million dollars to [Plaintiff]."
>
> Shilo Inn's arguments again miss the mark. Stated above, my May 11, 2012, order only addressed the narrow issue of whether it would be proper to appoint a receiver based on the facts presented before me as of that date. I did not rule that Shilo Inn's payment to Plaintiff would reinstate Defendants' loans or otherwise cure all of Defendants' past and future monetary and non-monetary defaults.

Opinion & Order [79]. This Court reiterated in a November 15, 2012 Opinion & Order:

> Shilo Inn's assertion that the loans have been reinstated pursuant to my May 11, 2012, ruling is misplaced. I did not rule that the payments by Shilo Inn would reinstate the loans or otherwise address the merits of the underlying foreclosure action.

Opinion & Order [84].

The District Court judges presiding over similar cases in Idaho and Washington have

reached the same conclusion. Regarding a motion to file a supplemental complaint, Magistrate

Judge Dale in the District of Idaho stated:

> The Court did not issue a substantive ruling resolving the foreclosure claim, nor did its order effect a reinstatement of the loans. The Court's use of the quoted language should not be and cannot reasonably be construed in the manner Defendants suggest, given the context of the motion and the facts before the Court at that time. The Court did not make any sweeping ruling resolving the foreclosure cause of action, or that payment of the

arrearages described in the Motion for Appointment of Receiver would reinstate
Defendants' loans or otherwise cure any of the other alleged defaults—past, present, or
future—mentioned in the Complaint or described in the Loan Documents.

California Bank & Trust v. Shilo Inn, No. 1:12-CV-00141-CWD, 2013 WL 501643, at *3 (D.

Idaho Feb. 8, 2013). More recently, Judge Suko in the Eastern District of Washington granted

summary judgment to CB&T and stated that "Shilo's belated contention . . . regarding its partial

payment of the June 2012 'reinstatement' amount constituting a complete cure of all loan

defaults" lacked merit. California Bank & Trust v. Shilo Inn, No. CV-12-0161-LRS, 2015 WL

300254, at *6 (E.D. Wash. Jan. 22, 2015).

     This Court's prior opinions made clear that this Court never ruled that Defendants' June

2012 payments reinstated the loans. In this opinion, the Court definitively holds that Defendants'

June 2012 payments did <u>not</u> reinstate the loans. The payments avoided the appointment of a

receiver but it is undisputed that Defendants did not cure their non-monetary defaults.

Repayment of the loans in full was still due on the loans' maturity date, on December 31, 2013.

     Similarly, Defendants' claim that CB&T wrongfully refused to accept a "tender to

reinstate" the Hemstreet Loan is without merit. The June 2012 payment was not a full payment

of all monetary amounts then due and owing because the attorneys' fees due and owing were not

paid in full. Therefore, they failed to cure all defaults under the Hemstreet loan.

## III.    Counterclaims

     Defendants bring counterclaims for breach of contract, breach of the implied covenant of

good faith and fair dealing, tortious misrepresentation, and unfair business practice. The Court

finds that Defendants waived all claims in the parties' Settlement and Release Agreement.

Furthermore, Defendants' counterclaims fail because Defendants do not allege any damages.

16 – OPINION & ORDER

a.  Defendants' waiver of claims

On January 28, 2013, the parties entered into a Settlement and Release Agreement.

Ventura Decl. Att. 13. As part of the Agreement, CB&T agreed to forbear from foreclosing on its

deeds of trust and to accept a discounted payoff of $21,000,000 if Defendants made the

discounted payoff on or before April 30, 2013, the "Loan Payoff Date." Id. at ¶ 6. As

consideration for CB&T's forbearance and agreement to accept a lower payoff amount,

Defendants agreed in Section 9 of the Agreement to the following:

> The Shilo Inn Entities and Hemstreet, on behalf of themselves and on behalf of the Shilo
> Inn Entities' and Hemstreet's Related Parties, fully and forever release, and discharge
> CB&T and CB&T's Related Parties from all claims, debts, liabilities, demands,
> obligations, promises, acts, agreements, costs and expenses (including but not limited to
> attorneys' fees), damages, actions, cross-actions, and causes of action which relate to the
> Individual Actions . . .

Id. at ¶ 9. Section 9 goes on to state that the releases in favor of CB&T include:

> any and all claims, demands, actions or causes of action of any kind or nature, in law or
> equity. . . whether known or unknown, and related in any way to the Loans, the Loan
> Documents, the Collateral Properties and the Individual Actions. . . .

Id. Section 5 of the Agreement provides that:

> in the event the Loan Payoff Amount is not made on or before the Loan Payoff Date, then
> CB&T shall thereafter immediately. . . (ii) pursue any and all remedies at law or equity to
> recover all sums due and owing under the Loan Documents according to the terms and
> conditions of said Loan Documents.

Id. at ¶ 7.

Defendants did not timely make the discounted payoff. The parties dispute whether

Defendants' failure to make the payoff impacts the release of claims.

CB&T argues that the language regarding the release was effective upon execution of the

Agreement, on January 28, 2013. CB&T contends that the release was not contingent on

Defendants making the loan payoff. CB&T argues that the Agreement makes clear that

17 – OPINION & ORDER

Defendants waived any claims and defenses and, because Defendants did not pay the payoff, "all sums due under the Loan documents [are] due and owing again." Pl.'s Mot. 22.

Defendants argue that, while the plain language of the release bars any affirmative claim by Defendants, it makes no mention concerning Defendants' right to defend the foreclosure claim on the basis that the loans were reinstated.

The Settlement Agreement clearly includes the release of "any and all claims." Defendants' attempt to distinguish between an affirmative claim and a defense is not persuasive, because Defendants' defenses (which they have filed as counterclaims) are encompassed by the language barring "all claims." Defendants' "defenses" are not defenses to the fact that the amounts are due and owing, but rather, are affirmative claims for damages allegedly arising from CB&T's actions before the loan fully matured.

Defendants also argue that CB&T is not allowed to enforce both the original monetary obligation and the release provisions in the Settlement Agreement. Defendants contend that the Agreement was an accord and, therefore, CB&T may either sue under the terms of the original obligation or under the terms of the Agreement (the "accord") but not both. In other words, CB&T can seek damages for the full amount of the damages incurred pursuant to the original obligations as if the Settlement Agreement had never existed, but it cannot enforce the Agreement's release of claims by Defendants. Furthermore, Defendants argue that CB&T has rescinded the Agreement by electing to sue under the original obligations.

Defendants cite Sybron Corp. v. Clark Hosp. Supply Corp., 76 Cal. App. 3d 896, 903, 143 Cal. Rptr. 306 (Ct. App. 1978), for the proposition that where a settlement agreement is reached for a compromised amount that calls for future payments, and the debtor fails to make payment, the non-breaching party is limited to those damages directly stemming from the breach

of the settlement agreement or the compromised claim amount. Any provision which attempts to provide the non-breaching party with an amount in excess thereof is an impermissible penalty. Id.

However, the facts of this case are distinguishable from Sybron. In Sybron, a provision in the settlement agreement allowed the creditor to file a stipulated judgment in the amount of the original claim if the debtor defaulted under the terms of the settlement agreement. The court held that the stipulated judgment amount bore no reasonable relationship to the range of actual damages. The court viewed the stipulated judgment amount as a penalty.

Here, Defendants released their claims against CB&T as of the date of the execution of the Agreement. The Agreement unequivocally states that the release of claims against CB&T "shall become effective as of the date of the execution of this Agreement." Ventura Decl. Att. 13, at ¶ 9. The release was in consideration for entering into the Agreement, as opposed to being triggered by a default in the terms of the Agreement. Notably, earlier in the Agreement, the parties provided that releases of claims against Defendants would become effective "if the Payoff Amount is paid in full by the Payoff Date." Id. at ¶ 8. The distinction between the effective dates of the releases provides additional support for the notion that the parties were in agreement that Defendants released all claims as of the Agreement's execution.

CB&T is now enforcing the terms of the Settlement Agreement, rather than "trying to have their cake and eat it too," as Defendants allege. Because Defendants never delivered the Loan Payoff Amount, CB&T seeks to enforce the Agreement's terms regarding the consequences of Defendants' failure to pay the Loan Payoff Amount by the Payoff Date. If the release was not enforceable until Defendants paid the Loan Payoff Amount, then Defendants would have had no incentive to pay, nor would CB&T have received any consideration for

agreeing to accept a reduced amount. Defendants released any claims against CB&T by executing the Settlement Agreement. Therefore, the Court grants CB&T summary judgment on Defendants' counterclaims.

      b.  Damages alleged in counterclaims

Even if Defendants could bring counterclaims against CB&T, the proposed counterclaims fail because Defendants fail to allege damages. The alleged harm Defendants suffered was to pay money to CB&T that they were already obligated to pay.

Defendants argue that CB&T had an affirmative duty to reinstate the loans and failed to do so. Defendants argue that their damages arise from the fact that, had the loans been reinstated, Defendants would have been able to obtain alternative financing to pay-off the loan upon maturity and "could have avoided a senseless and costly bankruptcy filing." Defs.' Opp. 21. Defendants ask the Court to exercise its power in equity because it was allegedly CB&T's failure to reinstate the loans that prevented Defendants from refinancing the properties by the maturity dates.

However, as discussed above, the loans were not reinstated by Defendants' June 2012 payments. Therefore, Defendants' counterclaims fail because they do not allege any damages.

**IV.   Attorneys' Fees and Costs**

CB&T argues that, under the Loan Documents, CB&T is entitled to recover the amount of attorneys' fees, costs, and other expenses incurred in protecting its interests and enforcing its rights under the Loan Documents, including all attorneys' fees and costs incurred as a result of the Bankruptcy cases. CB&T quotes language from the Deeds of Trust that specifically provide:

> . . . all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interests or the enforcement of its rights shall become a part of the indebtedness payable on demand. . . [including] Lender's reasonable attorneys'

fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable
attorneys' fees and expenses for bankruptcy proceedings . . .

See, e.g., Ventura Decl. Att. 2, at 5.

CB&T contends that the amount of attorneys' fees and costs and other expenses included
in the indebtedness are reasonable. CB&T argues that attorneys' fees and other expenses are
governed by the agreement of the parties not by the lodestar method which applies in
determining attorneys' fees under fee-shifting statutes. Furthermore, CB&T argues that under
either method their fees are reasonable based on comparable legal services in southern
California, where the attorneys are based. CB&T asks the Court for judgment for attorneys' fees
and costs that it incurred in this action or otherwise in pursuit of foreclosure, in an amount to be
proven by separate motion after entry of judgment.

Defendant argues that CB&T's assertion of entitlement to attorneys' fees and costs fails
for several reasons. First, Defendants argue that the Court should defer its decision until after all
claims and defenses are resolved at trial. Second, Defendants contend that CB&T's request for
fees is limited by California's statutory scheme, which provides a cap on attorneys' fees incurred
as a result of the default and foreclosure process. Third, Defendant argues that the amount of
legal fees and expenses are not reasonable, because they are not in accordance with local rates.

The parties are in agreement that any decision about attorneys' fees should take place
through a separate judgment, after the entry of judgment in this case. The Court agrees with
CB&T that it is entitled to its reasonable attorneys' fees and expenses, but the Court defers the
determination of the appropriate amount until after the rest of the issues in this case are resolved.

## V.    Res Judicata and Collateral Estoppel

On January 22, 2015, Judge Suko from the Eastern District of Washington entered
summary judgment in favor of CB&T in a nearly identical case dealing with the foreclosure of

21 – OPINION & ORDER

Shilo Inn, Moses Lake, LLC. See California Bank & Trust v. Shilo Inn, No. CV-0161-LRS, 2015

WL 300254 (E.D. Wash. Jan 22, 2015). CB&T argues that under the doctrines of res judicata

and collateral estoppel, Defendants are barred from re-litigating the same claims and issues.

CB&T contends that, because of the judgment in the Moses Lake case, the Court is compelled to

grant CB&T's motion relating to Defendants' counterclaims. Because the Court grants summary

judgment to CB&T based on the merits of this case, the Court finds it unnecessary to rule on the

issues of res judicata or collateral estoppel.

## CONCLUSION

The parties' requests for judicial notice [128], [130], [135], and [138], are GRANTED.

CB&T's motion for partial summary judgment on judicial foreclosure and summary judgment on

Defendants' counterclaims [122] is GRANTED. Oral argument is not necessary.

CB&T is entitled to foreclose its liens against its security interests in Shilo Seaside, Shilo

Newberg, and Shilo Rose Garden's real and personal property, including rents and leasehold

interests (the "Property"). CB&T is entitled to the issuance of writs of execution directing the

U.S. Marshal to levy on and sell the Property. To the extent that the U.S. Marshal collects

money from the sales of the Property and deposits those funds into the registry of the Court,

those funds shall be allocated to the payment of the Judgments in these actions. All right, title,

claim, or interest of the Shilo Defendants, or any of them, and all of the persons claiming by,

through, or under them, or any of them, subsequent to the execution of the Deeds of Trust for the

above-described Property, including any real or leasehold estates, or any part thereof, are

declared inferior and subordinate to CB&T's liens and are forever foreclosed except only for the

statutory right of redemption allowed by law. Any and all Defendants claiming any right, title,

estate, lien, or interest in and to the Property, or any part thereof, and any and all persons

claiming any right, title, estate, lien, or interest in the Property, or any part thereof, subsequent to the date of CB&T's Deeds of Trust are forever foreclosed of any such right, title, estate, lien, or other interest as against CB&T in this action. CB&T is entitled to become a credit bidder and purchaser at the sale(s) by the U.S. Marshal. The purchaser at the sale(s) is entitled to exclusive possession of the Property from and after the date of sale(s) and is entitled to such remedies as are available at law to secure possession. CB&T is entitled to its reasonable attorneys' fees and expenses, in an amount to be proven at a later date. CB&T is entitled to a deficiency judgment against the Shilo Defendants as to their respective loans in an amount to be established after completion of the foreclosure sale(s).

IT IS SO ORDERED.

Dated this ____ day of _____, 2015.


MARCO A. HERNÁNDEZ
United States District Judge